Sprague *v*. Rockwell et als.

NATHAN T. SPRAGUE *v*. SYLVESTER B. ROCKWELL, CO-
LUMBUS SMITH AND OTHERS ;
AND
NATHAN T. SPRAGUE *v*. SYLVESTER B. ROCKWELL
AND OTHERS.

[ IN CHANCERY.]

*Record of Assignment of Mortgage.     Petition for Foreclosure.
Pleading.*

Record of assignment of a mortgage is not necessary, to render the assignment effect-
ual as against attaching creditors of the assignor.
A mortgagee having assigned the mortgage, took from the mortgagor's assignee in
bankruptcy, and from the mortgagor and his wife, conveyances of the mortgaged
premises.  *Held*, that such conveyances, being subsequent to the assignment, did
not affect the title and rights of the assignee of the mortgage.
A petition for foreclosure brought by an assignee of the mortgage against the assignor
to whom the mortgagor's assignee in bankruptcy and mortgagor and wife had con-

51

veyed the mortgaged premises, and against subsequent mortgagees and attaching creditors of the assignor, alleged that by said conveyances the assignor became the owner in fee of the premises. *Held*, that it was shown by what was otherwise alleged, *q. v.*, that what was alleged, taken all together, was tantamount to a representation that the assignor had come to own in the right and character of mortgagor.

Attaching creditors in answering such petition, put their claim solely on the effect of their attachment against the assignor. *Held*, that that could be operative against petitioner only in virtue of some right of the assignor against petitioner; but that in the absence of fraud, the assignor's only right was to redeem.

The statute providing for foreclosure by petition does not require the fulness and particularity required by a bill. A general and comprehensive statement of ultimate facts constituting the ground of right and liability, is sufficient. Thus, where petition for foreclosure by an assignee of a mortgage, after alleging the assignment to petitioner, and delivery to him of the note and mortgage, alleged that the note and mortgage had ever since been and still were his property, and that he was the holder, owner, and bearer of the note, it was *held* that there was a sufficient allegation of title to present it for litigation on answer and proof.

THESE cases were petitions for foreclosure, and were heard together as one case.

The petition in the first-named case alleged that on September 27, 1870, Edmund D. Munger executed to defendant Rockwell a mortgage of certain land in Middlebury, conditioned for the payment of his promissory note of that date for $3,937, payable to said Rockwell or bearer, on or before April 24, 1871, with interest annually; that on June 28, 1872, Rockwell assigned the mortgage and delivered the note to the petitioner; " that said note and mortgage ever since have been and now are the property of the petitioner," that they were still unpaid and undischarged, " and that he is the holder, owner and bearer of said note;" that on January 8 and 14, 1873, Rockwell became the owner in fee of said land by conveyances thereof by Munger and wife and Munger's assignee in bankruptcy; that on January 23, 1874, Rockwell executed another mortgage of the same land to Norman W. and Hannah M. Boardman, to secure payment of $950, that on March 27, 1874, he executed still another mortgage thereon to Columbus Smith, and that both of those mortgages were still in force; and that after Rockwell became the owner in fee of the premises as aforesaid, George B. Benner and his wife Elizabeth Benner and others attached said land in suits that were still pending, and thereby obtained liens thereon that still existed.

Sprague *v.* Rockwell et als.

The petition in the other case alleged that on December 20, 1870, Munger executed to Rockwell a mortgage of certain other land in Middlebury, conditioned for the payment of his promissory note of that date for $5,000, payable to Hiram Walker, and indorsed by Rockwell; that Munger did not pay said note, but that Rockwell did; that afterwards on June 28, 1872, Rockwell applied to the petitioner for a loan of money, a part of which he desired to meet indebtedness resulting from his payment of the note to Walker, and by writing, sealed and acknowledged, assigned, and then and there delivered, said mortgage to the petitioner, as partial security for $8,286 then loaned him by the petitioner and witnessed by his promissory note of that date payable in two years with interest annually, no part of which had ever been paid; that Rockwell afterwards became " sole owner of the fee in and to said piece of land " by conveyance on January 8, 1873, from the assignee in bankruptcy of said Munger and by conveyance on the 14th from Munger and his wife, conveying to him any right, title or interest therein then remaining in them. The further allegations of the petition were as to the execution of the mortgage to the Boardmans, and were in that respect like those of the other petition.

The petitionees George B. and Elizabeth Benner answered, admitting their attachment and alleging a lien thereby for $3,220.80; denying Rockwell's indebtedness to the petitioner as alleged; denying that Rockwell ever mortgaged the land in question to the petitioner, or assigned to him the mortgage described in the petition; alleging that if he did, the petitioner never perfected his lien under said mortgage by causing the same to be recorded; alleging that those defendants had no knowledge of the execution or assignment of such mortgage; that by the deeds from Munger and wife and Munger's assignee a perfect title to said land was conveyed to Rockwell, and his mortgage note paid and mortgage discharged; that those deeds were duly recorded, so that Rockwell had perfect title of record; that these defendants made their attachment while the title of record remained in Rockwell and while Rockwell was in possession; and that they thereby obtained a lien that was valid as against the petitioner.

The answer was traversed and testimony taken. There was testimony tending to prove Rockwell's indebtedness and also the alleged assignment to the petitioner.

The first-named case was heard by PIERPOINT, Chancellor, at the January Term, 1878, on bill, answer and testimony, and decree rendered for the orator against all the defendants. Appeal by the defendants.

*E. J. Ormsbee* and *Stewart & Eldridge*, for the petitioner.

*Gleason & Field*, for the defendants.

The petitionees' mortgages were paid and discharged by the conveyances of Munger and wife and the assignee to Rockwell. *Pomroy* v. *Stevens*, 11 Met. 244. The record showed title in Rockwell at the time of the attachment. *Thomas* v. *Warner*, 15 Vt. 110.

Munger is not liable to the petitioner. The petitioner is estopped from claiming any lien prior to that of an attaching creditor who attached without notice of his claim. *McCabe* v. *Farnsworth*, 27 Mich. 52 ; *Hicks* v. *Cram*, 17 Vt. 449.

The mortgages were not assigned to the petitioner.

The bill alleges that the defendants have title by attachment, and that the lien by attachment still exists. No proof of that is necessary. *White* v. *Yaw*, 7 Vt. 357.

This is a question between two creditors, one of whom kept his security concealed, and the other of whom has attached on the faith of apparent title in the debtor. *Carter* v. *Champion*, 8 Conn. 548 ; *Stanley* v. *Perley*, 5 Greenl. 369. See also *Bigelow* v. *Topliff*, 25 Vt. 273.

——— ———, for the defendants Benner and wife.

On the facts stated in the petition, the petitioner is not entitled to relief as against these defendants. The petitioner's title must be stated with clearness, and every right must be taken most strongly against him, and no unnatural intendments are to be made in his favor. Story Eq. Pl. ss. 452 a, 508 a. He must prevail, if at all, on the case stated in the petition ; and if this is

deficient, he is not aided by the testimony, nor would he be aided even by an admission in the answer. *Thomas* v. *Warner*, 15 Vt. 110; *Sanborn* v. *Kittredge*, 20 Vt. 632. To entitle Rockwell to the benefit of the doctrine of subrogation, he should have paid the note pursuant to a legal obligation. A voluntary payment would give him no equitable interest in the mortgage; and so he could assign none to the petitioner. The petition does not aver that Rockwell was in any way liable on or connected with the note, as indorser, surety, guarantor, or otherwise. The averment of the condition of the mortgage is not an averment of the facts as set forth in the condition. But treating the recital of the condition as an averment, the petition fails to allege any perfected legal duty on Rockwell's part to pay the note. That the note was *indorsed* by him as surety does not imply an absolute, unconditional undertaking on his part to pay the note. *Center Turnpike Co.* v. *Smith*, 12 Vt. 212; *Sanford* v. *Norton*, 14 Vt. 228.

The petition alleges liens by the defendants by way of attachments, and nothing is alleged that goes to qualify or impair the apparent equity of the defendants.

The conveyances to Rockwell did not operate to merge or extinguish the mortgage title. There can be no merger unless the two estates unite in the same person in the same right. The conveyances gave Rockwell only the equity of redemption. *Myers* v. *Brownell*, 1 D. Chip. 448; *Marshall* v. *Wood*, 5 Vt. 250; *Pratt* v. *Bank of Bennington*, 10 Vt. 293.

The recording of the assignments was not necessary to their validity, and the defendants Benner and wife were bound to take notice thereof. They were not justified in assuming from the absence of an assignment of record that none had been made. PHELPS, J., in *Pratt* v. *Bank of Bennington*. Such is the rule as between an assignee of a prior mortgage and a subsequent mortgagee without notice. *A fortiori* a subsequent attaching creditor should not be permitted to claim priority over an outstanding mortgage in like circumstances.

It cannot be claimed that the equities of a creditor are greater than those of a purchaser. *Fitzsimmons* v. *Joslin*, 21 Vt. 129; *Poor* v. *Woodburn*, 25 Vt. 234; *Hackett* v. *Callender*, 32 Vt. 97.

The opinion of the court was delivered by

BARRETT, J.   The two cases were argued as one case, and only copy of one answer was presented.   That answer denies the indebtedness of Rockwell to Sprague, to secure which said mortgages were assigned, as alleged in the petition ;   but it is proved. It denies the alleged assignment to Sprague ;   but that is proved. It claims that if assigned, such assignment was of no effect as against the subsequent attachment of the answering defendants, for the reason that the assignment was not recorded ; but recording is not necessary in order to render such assignment effectual. *Pratt* v. *Bank of Bennington*, 10 Vt. 293.   The answer claims that the deed of the assignee in bankruptcy and of Munger and wife to Rockwell, paid off the original mortgage debts, and thereby Rockwell held an absolute and unincumbered title in fee.   But those deeds were made after Rockwell's assignment to Sprague, and, of course, did not affect Sprague's title and rights under the assignment.   As to the point made on what is said in the petition about Rockwell having become the owner in fee, that is shown by what is otherwise stated, to be intended to mean that he had become such owner subject to the rights of Sprague as assignee of the mortgages held by him ; and the purpose of the statement was to show that Rockwell had an interest that rendered him a proper party defendant, and not to set out precisely and explicitly what his interest was, or as having an interest that affected the ground of right in Sprague to enforce the mortgages against all interested parties.   What is stated in the petition is tantamount, when taken together, to the representation that Rockwell had come to own in the right and character of the mortgagor in the assigned mortgages.

The answer puts the claim and right of the defendants solely on the effect of their attachment in the suit against Rockwell. That could be operative against Sprague only in virtue of some right in Rockwell as against Sprague.   But the only right of Rockwell in that respect is that of redeeming the mortgages assigned by him to Sprague.   No fraud is alleged or shown as between Sprague and Rockwell, of any kind, and so, of course,

Rockwell's creditors can have no right against Sprague that Rockwell himself would not have.

The petition avers and the answer does not deny, and the proof shows, that Munger did not pay the mortgage note to Walker, and that Rockwell did. This would effectuate Rockwell's right as mortgagee to the security created by the mortgage, and such right would be the subject of valid assignment, vesting the same right in the assignee. It will be assumed, on what is stated in the petition, undenied in the answer and maintained by the evidence, that Rockwell paid the Walker note upon the compulsion exerted upon him by his liability as endorser, and not as an outside volunteer. This meets the argument in that respect presented by one of the briefs for the defendants. The criticism in the nature of a demurrer *ore tenus* in the Supreme Court (not shown to have been made in the Court of Chancery), that Sprague's title is not sufficiently shown in the petitions, because the consideration for the assignment is not set forth with fulness and detail, is answered by saying that the statute providing for foreclosure by such petition does not require or contemplate such fulness and particularity as is requisite in an English bill in equity. On the contrary, the design of the *short* mode was, to avoid the requirement for such fulness and particularity; and it is consistent with that design to hold, that a general and comprehensive statement of ultimate facts, as constituting the ground of right and liability, would be sufficient in that respect. So, the statement in one of the petitions of the assignment of the note and mortgage to Sprague, and the delivery of them to him, and "that said note and mortgage ever since have been, and now are, the property of the petitioner, . . . and that he is the holder, owner, and bearer of said note," is regarded to be a sufficient statement of title in that respect, to present it as the subject of question and litigation upon the answer and proofs. As indicating tolerated vagueness and informality in these petitions, I have in mind several cases that have gone through long processes of sharp litigation, and final decision in the Supreme Court, that, if instituted by English bill, would have gone out on demurrer. As a specimen, I refer to *Babbitt* v. *Bowen*, 32 Vt. 437, in which, before me as Chancellor, this subject was

made prominent for consideration, and, as I infer from the report of the case, was brought to the consideration of the Supreme Court.

What is thus said is not to be regarded as commending either of the petitions as specimens of creditable legal drafting, even under the statute authorizing the *short* mode. Proper drafting would have avoided occasion for several grounds on which question and criticism have been made in the answer and argument, and would have relieved the court from the work of meeting such question and criticism, as has been done above. It is a legitimate quality of legal drafting that it should not give occasion for debate on the score of insufficiency or informality.

*Decrees affirmed, and mandate accordingly.*